IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELWYN SELLERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 04 C 3663 |
| v. ) | |
| ) | Hon. Mark Filip |
| DALE BRAGG, CASSANDRA JOHNSON, ) | |
| ROBERT GARZA, ANTHONY AMATO, ) | |
| DAVID EVANS, CHESTER BACH, AND ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kelwyn Sellers ("Plaintiff" or "Sellers") has sued Defendants—the City of Chicago (also "City"), Dale Bragg ("Bragg"), Cassandra Johnson ("Johnson"), and Chicago Police Officers Robert Garza, Anthony Amato, David Evans, and Chester Bach (collectively, "Officers")—in a multi-count amended complaint with claims alleged under both federal and state law. (D.E. 6.)[1] Plaintiff alleges claims under 42 U.S.C. § 1983, concerning the actions of the individual defendants, which include claims regarding: unlawful arrest and detention (Count I); denial of due process (Count II); and failure to train, supervise, and control against the City (Count III). Sellers also advances numerous state law claims, including malicious prosecution (Count IV); intentional infliction of emotional distress ("IIED") (Count V); and a *respondeat superior* claim and an indemnification claim pursuant to 745 ILCS 10/9-102 ("Section 9-102") against the City (Counts VI and VII, respectively). This case is before the Court on a Motion to Dismiss ("Motion") Counts II, IV, and V filed by the City of Chicago and the Officers pursuant

---

[1] The various docket entries in the case are cited as "D.E. ___."

to Federal Rule of Civil Procedure 12(b)(6). (D.E. 11.) As explained below, the Motion is denied in part and granted in part.

I. **BACKGROUND FACTS**

The background facts are taken from Plaintiff's amended complaint ("Amended Complaint") (D.E. 6) and are assumed to be true, as precedent requires, for present purposes. The Court takes no position concerning whether any of the allegations are actually well-founded.

On approximately April 15, 2002, Officers Garza and Amato informed an unidentified individual in Kelwyn Sellers's home that the officers needed to speak with Sellers because he was a potential witness to a crime. (D.E. 6 ¶ 7.) When told Sellers was not home, they asked that Sellers be instructed to go to the Seventh District Police Station to speak with them. (*Id.*) Plaintiff received the message, and he proceeded to the Seventh District station. (*Id.* ¶ 8.) Upon arriving at the station, Officers Evans and Bach informed Sellers that he would have to remain overnight at the station because Garza and Amato, who were off duty, would not be back until the next day. (*Id.*) When Sellers asked if he could go home and return the next day, the officers said no. (*Id.*) Evans and Bach handcuffed Sellers and informed him that he was wanted in connection with the kidnapping of a woman (unnamed in the amended complaint) that he maintains he did not then know. (*Id.* ¶¶ 9-10.)

The next day, Garza and Amato interviewed Sellers. (*Id.* ¶ 11.) After the officers informed him of the circumstances of the alleged kidnapping, Sellers provided them with "a verifiable and concrete alibi." (*Id.*) Soon thereafter, the officers (presumably Garza and Amato, but the Amended Complaint does not specify) placed Mr. Sellers in a line-up. (*Id.* ¶ 13.) According to Sellers, the detention and line-up had nothing to do with the kidnapping of a

woman (or, in the alternative, Plaintiff claims that the police "had no reason to believe that Mr. Sellers had committed the kidnaping"). (*Id.* ¶ 12.) Instead, as Sellers claims to have later learned, the officers were interested in Plaintiff's potential involvement in the supposed kidnapping of an FBI drug informant, Dale Bragg. (*Id.*)

Before this first line-up, the Officers informed Sellers that he was going to be viewed by the woman whom police (supposedly) suspected him of having kidnapped. (*Id.* ¶ 13.) The woman who viewed the line-up was, in fact, Cassandra Johnson, purportedly a witness to Bragg's kidnapping. (*Id.* ¶ 15.) Johnson apparently told the Officers that Plaintiff was not involved with the kidnapping. (*Id.*) After the line-up, Sellers was told that the woman informed the Officers that "Sellers was not the abductor" and the Officers also told Sellers that "he was going to be held for a second line-up." (*Id.* ¶ 14.) Notwithstanding the woman's non-identification (which Sellers alleges he was told about (*id.*)) the Officers created a false police report indicating that Johnson identified Sellers. (*Id.* ¶ 15.)[2] The Officers then told Sellers that he would have to participate in a second line-up. (*Id.*)

The Officers then placed Sellers in a second line-up. (*Id.* ¶ 16.) The Officers told Sellers that he was identified by a man who allegedly witnessed the kidnapping of the woman. (*Id.*) The witness to this second line-up, who is believed to be Defendant Bragg, told the police that Sellers was not involved in the kidnapping but the Officers created false reports reflecting otherwise.

---

[2] Plaintiff alternatively alleges that Johnson did actually implicate and identify Sellers, but that this identification was knowingly false and a product of the Officers having "engaged in suggestive and unconstitutional actions in order to induce Johnson to identify Mr. Sellers even though they knew he was not involved." (D.E. 6 ¶ 15.) Plaintiff also pleads in the alternative that Johnson intentionally misindentified Sellers and that the "Officers knew she was doing so and that her identification was entirely unreliable and/or that Bragg was not in fact kidnaped and/or that Johnson did not in fact witness a kidnaping." (*Id.*)

3

(*Id.* ¶ 17.) Alternatively, Sellers claims that the Officers' tampering with Bragg corrupted the line-up and purposefully led Bragg to misidentify Sellers. (*Id.*) Sellers further claims in the alternative that Bragg intentionally misidentified Sellers and that the Officers knew he was doing so and "that his identification was entirely unreliable and/or that Bragg was not in fact kidnaped." (*Id.*)

The Officers kept Sellers in the station for three days. (*Id.* ¶ 18.) At no time did he receive a probable cause hearing. (*Id.*) He also received inadequate nutrition and was not provided with a mattress, blanket, or pillow. (*Id.*) Only after three days was Plaintiff charged with aggravated kidnapping and held at the Cook County Jail for over one month, until such time as he was able to post bond. (*Id.*) In February 2003, Sellers was acquitted of the crimes for which he was charged. (*Id.* ¶ 19.)

Relevant to this case, on November 12, 2002, Joseph Lopez filed a putative class action against the City of Chicago, CPD Detectives James Delafont, Jennifer DeLucia, Hector Vergara, and CPD Officers Jose Gomez, Daniel Jacobs, and Robert Myers. (Case Number 01-C-1823, D.E. 69.) The second amended complaint in *Lopez* alleged that the *Lopez* defendants engaged in an unconstitutional procedure whereby the police investigated and interrogated recent arrestees without taking them before a judicial official for a determination of probable cause, a procedure referred to as the "hold past court call procedure." (*Id.* ¶ 1.) Combined with the CPD's failure to furnish a sleeping facility (or mattress, pillow, or blanket), the *Lopez* plaintiff alleged that "arrestees detained under the hold past court call procedure are kept from disinterested judicial officials and are isolated for days in interrogation rooms and deprived of necessary sleep while police continue to interrogate them and build evidence against them; all raising the specter of

torture, false confessions, and unlawful convictions." (*Id.* ¶ 4.) The causes of action in the second amended complaint from *Lopez* are detailed, as relevant, more fully below. Significantly, the *Lopez* action concerned two putative classes: (1) "[a]ll persons arrested by the Chicago Police Department without an arrest warrant from March 15, 1999 to October 15, 2003 and who were detained in excess of 48 hours before approval of charges or release" and (2) "all arrestees detained in a Chicago Police Department Division interrogation room(s) in excess of 24 hours before approval of charges or release at any time from March 15, 1999 to the [sic] October 15, 2003." (Case No. 01-1823, D.E. 90 at 11.) After multiple hurdles in certification, the *Lopez* plaintiff abandoned all attempts to have a class certified in May 2004.

On May 26, 2004, Plaintiff Sellers filed his initial complaint in the instant case. On July 19, 2004, he filed the Amended Complaint which is the subject of this opinion. The City of Chicago and the Officers (in other words, all Defendants except civilians Dale Bragg and Cassandra Johnson) filed a motion to dismiss counts II, IV, and V of Plaintiff's complaint on September 8, 2004. (D.E. 11.) Plaintiff responded to the motion on September 28, 2004, opposing dismissal of all three counts as to the City of Chicago, and only Count II as to the Officers (*i.e.*, Plaintiff conceded, in response to the Defendants' arguments, that Counts IV and V should be dismissed as against the Officers). (D.E. 14 at 1, 2.) Because of ambiguities in the motion to dismiss briefing, the parties jointly moved to file a supplemental round of briefing, which request the Court granted. (D.E. 16.)

## II. **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *accord Johnson v.*

5

*Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on the motion, the Court accepts all well-pleaded facts alleged in the complaint as true and accords the plaintiff all reasonable inferences from those facts. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 614 (7th Cir. 2001). In considering a motion to dismiss, a court may also take judicial notice of matters in the public record. *See Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *accord Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).

## III. DISCUSSION

To begin, in the interests of clarity, the Court notes that Plaintiff has conceded in response to the Defendants' motion that Counts IV and V should be dismissed as against the Defendant CPD Officers. (D.E. 14 at 1.) As a result, those counts are dismissed as against the Defendant Officers and the Court will not consider them further. The Court therefore proceeds to the disputed counts—first, as to Count II (the *Brady* claim as to all Defendants), and second, as to Counts IV and V (the state law malicious prosecution and IIED counts as to the City).

### A. Count II

Defendants provide two principal arguments for dismissing Count II of the Amended Complaint. First, Defendants allege that Plaintiff effectively plead himself out of court by conceding in his Amended Complaint that he was aware of the Officers' misconduct at the time of the trial. (D.E. 15 at 3.) Second, and relatedly, Defendants maintain that Plaintiff failed to allege that exculpatory information to which he was entitled was suppressed by the Officers.

(D.E. 11 at 4-5.)

In cases where police officers are accused of purposely withholding information, they may be liable for *Brady* violations, such as the due process violation Plaintiff alleges here. As the Seventh Circuit stated in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001):

> If officers are not candid with prosecutors, then the prosecutors' decisions—although vital to the causal chain in a but-for sense—are not the important locus of action. Pressure must be brought to bear elsewhere. Prosecutors kept in the dark by the police (and not negligent in failing to hire other persons to investigate the police) won't improve their performance with or without legal liability for their conduct. Requiring culpable officers to pay damages to the victims of their actions, however, holds out promise of both deterring and remediating violations of the Constitution.

*Id.* at 752.

Translated into practical terms, caselaw has set forth a three-part test to identify the contours of a Section 1983 due process claim based on allegations that law enforcement officers withheld information or evidence necessary to ensure the fair trial guaranteed by the Constitution (*i.e.*, a *Brady* claim). First, the evidence at issue must be favorable to the accused, meaning either exculpatory or impeaching; second, the evidence must have been suppressed by the state, either willfully or inadvertently; and third, the suppressed evidence must be material to an issue at trial. *See, e.g., Ienco v. Angarone*, 291 F. Supp. 2d 755, 760 (N.D. Ill. 2003) (citing *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002)).

Particularly relevant to the instant case, evidence is not "suppressed" where a plaintiff was aware of the alleged misconduct involving the withholding of exculpatory evidence, and thus a *Brady* claim is not cognizable under such circumstances. *See Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003); *Ienco v. Angarone*, 291 F. Supp. 2d at 761 (no *Brady* violation if exculpatory evidence can be obtained through exercise of reasonable diligence). Additionally, by

definition, police officers do not "suppress" evidence from a criminal defendant/civil plaintiff when they inform prosecutors of their misconduct or the exculpatory evidence. *Newsome*, 256 F.3d at 752. This is the case because, generally speaking, "a prosecutor is responsible for learning of and disclosing all exculpatory evidence known to the police." *Id.* In other words, police officers only suppress exculpatory evidence—violating the Due Process Clause—where they deliberately withhold such evidence and thus prevent prosecutors from complying with their aforementioned obligation under *Brady v. Maryland*, 373 U.S. 83, 86-88 (1963), to disclose exculpatory evidence to a criminal defendant. *See Newsome*, 256 F.3d at 752-53.

Applying this three-part analysis to the instant case, the Court first concludes that the allegedly withheld evidence was favorable to the accused. In this regard, the analysis is somewhat complicated by the diametrically opposed alternative pleading of the Plaintiff. But that sort of alternative pleading is not prohibited, and ambiguity enures to the benefit of Plaintiff, not the Defendants, at least at this stage of the proceedings. In this regard, evidence of the kind allegedly withheld (in at least some of the alternative pleadings)—that the identification of Plaintiff in two different lineups was coerced—would have undermined the results of the lineups.

Second, Plaintiff sufficiently pleaded that the relevant evidence was suppressed (again, particularly given the alternative pleadings in play). To be sure, some of the alternative pleadings seem diametrically opposed to the idea of suppression—at least as to any purportedly faked reports concerning an identification, coerced or otherwise, by Cassandra Johnson. (In this regard, the Amended Complaint specifically avers that Sellers was told by the Officers that Johnson had informed the Officers that "Sellers was not the abductor . . . ." (D.E. 6 ¶ 14.).) Nonetheless, at least as to the Bragg identification, it is a permissible inference from the facts asserted in

Plaintiff's complaint that the Officers who allegedly coerced the identification of Sellers did not inform the prosecutors or Sellers that they had fabricated and coerced that information.

At the very least, Defendants maintain, Sellers "makes no allegation that Defendant Officers deliberately withheld exculpatory evidence." (D.E. 11 at 4.) While this is true, the facts Plaintiff has alleged permit the inference that the Officers deliberately withheld some potentially exculpatory information—again, particularly as to any Bragg identification. Given the need to afford a plaintiff the benefit of all reasonable inferences at this juncture, the Court finds that Plaintiff has sufficiently pleaded that Defendants withheld and suppressed at least some exculpatory evidence.

Defendants rely on *Kittler v. City of Chicago*, No. 03 C 6992, 2004 WL 1698997 (N.D. Ill. July 27, 2004), for the proposition that Count II must be dismissed because evidence of misconduct was not withheld from Sellers. (*Id.* at 3.) *Kittler* concerned a plaintiff who alleged that the defendants had taken a misleading photograph of him, which was allegedly a form of false evidence. Consequently, the court held that "[i]n the instant case, there was no withholding of exculpatory evidence. Kittler was aware of the alleged misconduct concerning the photograph at trial when it was introduced." *Kittler*, 2004 WL 1698997, at *5.

Were the only allegations in the Amended Complaint the supposedly false police reports stating that Cassandra Johnson had identified Sellers (in the wake of the Officers concededly telling Sellers that Johnson had *not* identified Sellers), then Defendants' *Kittler* argument might have some traction. But, again, there are also the allegations about the Bragg line-up. Given the traditional methods employed in a lineup, it is often the case that those in the lineup cannot view the individuals viewing the line-up participants. If that were the case, Plaintiff would be unable

to see the circumstances surrounding the identification, and what, if any, contact the Officers had with Bragg. He also would not be privy to any conversations the police had with Bragg before or after the line-up viewing. Discovery will enable the parties to explore these issues. For now, however, the Court draws all reasonable inferences in favor of Plaintiff. And it is an inference within the realm of plausibility that exculpatory information was suppressed from Plaintiff.[3]

As a result, for the reasons stated above, Defendants' motion to dismiss Count II is denied.

    B.    State Law Claims (Counts IV and V)

        1.    Background

            a.    Statutes of Limitation

The Illinois Local Government and Governmental Employees Tort Immunity Act provides the applicable statute of limitations for civil actions commenced against a local entity and its employees. *See* 745 ILCS 10/8-101(a). Accordingly, the statute of limitations is one year. *See id.*; *see also Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004). The parties appear to concur that, under ordinary circumstances, the statute of limitations for both claims would have expired in February 2004, and as the suit was filed on July 19, 2004, Plaintiff would face a time-bar on these claims. However, Sellers maintains that the *Lopez* class action tolled the relevant limitations periods such that these two claims remain timely as against the City. (D.E. 20 at 6-7, 9-10.)

---

    [3] While Defendants have contested aspects of the first two *Brady* violation elements, they have not contested the materiality element. Evidence is material where "suppression [of that evidence] undermines confidence in the outcome of the trial." *U.S. v. Turcotte*, 405 F.3d 515, 530 (7th Cir. 2005). Hence, the Court will presume the evidence is material for purposes of this motion to dismiss.

b.   Tolling

In *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* The Court extended this holding in *Crown, Cork & Seal Company, Inc. v. Parker*, 462 U.S. 345, 350 (1983), to all proposed class members, not just intervenors.[4] The parties' debate here centers around the relationship necessary between the putative class claims from the class action and the claims in an individual law suit to preserve individual claims that would otherwise be untimely.

For tolling to apply, claims do not have to be identical, but only substantially similar to the putative class claims brought in the original class action. *See Crown, Cook*, 462 U.S. at 355 (Powell, J., concurring) (quoting and citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 561-62 (1974) (Blackmun, J. concurring)); *accord Spann v. Comm. Bank of N. Va.*, No. 03 C 7022, 2004 WL 691785, *6 (N.D. Ill. Mar. 30, 2004) (St. Eve, J.); *Southwire v. J.P. Morgan Chase & Co.* 307 F. Supp. 2d 1046, 1062-63 (W.D. Wis. 2004) (Crabb, C.J.); *In re Linerboard*

---

[4] Both parties presume that the federal tolling rules set forth in *American Pipe* and *Crown, Cork* are applicable to the instant case, notwithstanding the Seventh Circuit's teaching that when state law supplies the period of limitations, state law also supplies the tolling rules. *See Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 265 (7th Cir. 1998) (collecting cases). As Defendant has not attempted to argue that Plaintiff's state law claims are not tolled given Illinois's general distaste for tolling—*see generally Portwood v. Ford Motor Company*, 701 N.E.2d 1102, 1104 (Ill. 1998) ("[W]e believe it would be unwise to adopt a policy basing the length of Illinois limitation periods on the federal courts' disposition of suits seeking class certification"); *id.* at 1105 ("[W]e affirm the circuit and appellate courts' holding that the Illinois statute of limitations is not tolled during the pendency of a class action in federal court")—the Court will not consider that argument and will presume for purposes of this motion that the tolling rules set forth in *American Pipe* and its prodigy are germane.

11

*Antitrust Litig.*, 223 F.R.D. 335, 351 (E.D. Pa. 2004); *Stutz v. Minnesota Mining Mfg. Co.*, 947 F. Supp. 399, 404 n.2 (S.D. Ind. 1996) (Barker, C.J.) ("For the legal fiction of tolling to be equitable to the defendant, the claims in both the class action and the individual action must be identical.").[5] The analytical metric typically is animated by Justice Powell's concurring opinion in *Crown, Cork*, where Justice Powell (joined by Justice O'Connor and then-Justice Rehnquist) wrote that "when a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.'" *Id.*, 462 U.S. at 355 (quoting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 562 (1974) (Blackmun, J., concurring)). In this regard, Justice Powell instructed that "the tolling rule of *American Pipe* is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status." *Id.* In general, then, those courts that have considered the issue teach that the former putative class claims must involve the same alleged violations and predicate factual universes as the individual's claim(s) in order for the statute of limitations on those claim(s) to be tolled. *See, e.g., Spann*, 2004 WL 691785, at *6; *Southwire Co.*, 307 F. Supp. 2d at 1062 ("Thus,

---

[5] Chief Judge Barker's statement in *Stutz* about how claims must be "identical" for *American Pipe* tolling to be in play may be worded in more absolutist terms than the other cases cited above. This Court need not take sides in the debate, as Plaintiff loses even under the more generous "substantially similar" analysis. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355 (1983) (Powell, J., concurring). The Court notes, however, that caselaw teaches that "[t]he tolling effect given to the timely filing in *American Pipe* 'depended heavily on the fact that [the filing] involved exactly the same cause of action subsequently asserted.'" *Southwire Co. v. J.P. Morgan Chase & Co.* 307 F. Supp. 2d 1046, 1062 (W.D. Wis. 2004) (Crabb, C.J.) (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 467 (1975)).

12

to claim a tolling benefit from a previous class action, the legal theory on which the class action plaintiffs sued must be the same as the theory used by the plaintiffs claiming the tolling benefit. Because the Heliotrope actions did not involve the same causes of action as those in plaintiffs' present case against defendants, plaintiffs may not claim any tolling benefit from the Heliotrope class actions."); *In re Linerboard Antitrust Litig.*, 223 F.R.D. at 351 (collecting various cases and citing and quoting *Vaccariello v. Smith & Nephew Richards, Inc.*, 763 N.E.2d 160, 163 (Ohio 2002), for the proposition that "when a class action is filed, 'the defendant is put on notice of the substance and nature of the claims against it' as to any subsequent individual claims that might be asserted arising out of the same set of facts"). In other words, the emphasis seems to be on the similarity of the claims and the underlying factual predicates between the proposed claims for which tolling is asserted and the putative class claims in the prior litigation.

c. Significance to the instant case

Defendants' motion alleges that Counts IV and V, the malicious prosecution and intentional infliction of emotional distress claims, are time-barred. Defendants contend that the relevant facts of the malicious prosecution and IIED claims exceed the universe of matters at issue in *Lopez* such that the class action would not have tolled the statute of limitations. (D.E. 23 at 2.) Specifically, Defendants assert that the proposed class action in *Lopez* related to claims that centrally concerned (1) the time of a putative classmember/plaintiff's warrantless arrest, (2) the time he or she was charged, and (3) the time he or she was released from police custody. (*Id.*) The two state claims that are the subject of this motion to dismiss, however, allegedly concern different and materially broader sets of facts, implicating different elements and legal theories. To the extent the *Lopez* complaint appears to include facts that overlap with the current claims,

Defendants maintain they are legally irrelevant details "to make his complaint tell a more colorful story for the lay reader or press" and that they were not the subject of the class allegations in any event. (*Id.* at 3.) Plaintiff argues for tolling by appealing to the policy reasons behind it: balancing the benefit of judicial economy by avoiding myriad individual filings in addition to the class action against the reasons to avoid excessive tolling—*i.e.*, putting a defendant on notice of potential individual claims so that it can protect itself. (D.E. 20 at 3-4.)

i.   Malicious Prosecution

The complaint in *Lopez* contained a variety of state and federal counts. There were five federal counts, all advanced under 42 U.S.C. § 1983: unlawful detention (2 counts), failure by the City to train its officers, excessive force, and police torture. There also were four state counts: assault & battery, IIED, *respondeat superior*, and indemnification. (Case No. 01-C-1823, D.E. 69 at 14-25.) There was no malicious prosecution count whatsoever. Of particular relevance here, the *Lopez* plaintiffs sought, in the wake of all of the counts, to certify two classes:

> (1) "All persons arrested by the Chicago Police Department without an arrest warrant from March 15, 1999 to October 15, 2003 and who were detained in excess of 48 hours before approval of charges or release." [and]
>
> (2) "All arrestees detained in a Chicago Police Department Detective Division interrogation room(s) in excess of 24 hours before approval of charges or release at any time from March 15, 1999 to Oct. 15, 2003."

(Case No. 01-C-1823, D.E. 90 at 11.) The first of these proposed classes related to count I from that case—a fourth amendment unlawful detention claim based on alleged failure to provide "prompt post-arrest probable cause hearings" (Case No. 01-C-1823, D.E. 69 at 14)—and the second related to count II—a fourteenth amendment claim relating to how classmembers allegedly were "subjected to torturous conditions of confinement while being held in the custody

14

of the CPD including being deprived of even minimally proper facilities for sleeping." (*Id.* at 16.) The various other state and federal claims in that case—including claims for assault and battery, excessive force, IIED, and police torture—were specifically denominated as "[i]ndividual claim[s]." (*E.g.*, *id.* at 18, 21, 24.)

In those cases where tolling is allowed, the individual claim is included within the putative class proceedings; where the individual action is "different in kind" from the class claim(s) in the class action litigation, then tolling does not adhere. *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1283 (11th Cir. 2003); *accord id.* ("[A] wrongful death action under Florida law is different in kind from any action based on a defective product. Because of this difference, a class action asserting primarily product liability claims would not include wrongful death claims unless wrongful death claims were explicitly included in the class action" and appellant-plaintiffs cannot "rely on only . . . [an] ambiguous class definition to support their argument for tolling under *American Pipe*").

When one compares Sellers's putative malicious prosecution claim to the proposed class proceedings in *Lopez*, it is clear that these are materially different claims. The putative malicious prosecution claim for Sellers relates to allegedly coerced identifications, allegedly false police reports, and the initiation of knowingly baseless criminal proceedings. *Accord Sneed v. Rybicki*, 146 F.3d 478, 480 (7th Cir. 1998) (showing of malicious prosecution under Illinois law requires showing of, *inter alia*, defendant's malicious initiation or continuation of criminal proceedings that are terminated in a manner indicative of plaintiff's innocence). *Lopez*, meanwhile, as is apparent from that complaint (Case No. 01-C-1823, D.E. 69) and the proposed class definitions, fundamentally concerned the length and conditions of a plaintiff's detention immediately

following his or her warrantless arrest. Indeed, malicious prosecution was not even a cause of action propounded in the *Lopez* complaint, much less the subject of the class certification effort. Under the circumstances, the proposed class certification in *Lopez* cannot toll the statute of limitations on Sellers's malicious prosecution claim. The particular issues and evidence related to Sellers's malicious prosecution claim are not fairly encompassed within the issues and evidence called for to resolve the proposed class questions in *Lopez* concerning whether a given class members warrantless arrest did not produce a sufficiently timely probable cause hearing and whether there were sufficient sleeping accommodations for a particular plaintiff following arrest. *See, e.g., Crown, Cork*, 462 U.S. at 354 (Powell, J., concurring) ("The [*American Pipe*] rule should not be read . . . as leaving a plaintiff free to raise different or peripheral claims following denial of class status."); *Spann*, 2004 WL 91785, at *6. Therefore, Defendants' motion is granted as to Count IV.[6]

---

[6] Plaintiff also makes a brief argument in the supplemental briefing cycle based on "Illinois' doctrine of equitable tolling." (D.E. 20 at 9.) This argument is respectfully rejected. The Supreme Court of Illinois has instructed that "[e]quitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000) (citing *Ciers v. O.L. Schmidt Barge Lines, Inc.*, 675 N.E. 2d 210, 214 (Ill. App. Ct. 1996)); *accord IPF Recovery Co. v. Ill. Ins. Guaranty Fund*, 826 N.E. 2d 943, 948 n.5 (Ill. App. Ct. 2005) (collecting cases). Plaintiff does not argue that any of these extraordinary circumstances is present here, and none seems to apply. Instead, Plaintiff suggests that "[e]quitable tolling applies here because Chicago was apprised of Plaintiff's state law claims less than one year after his claims accrued." (D.E. 20 at 9). (Apparently, Plaintiff—who is represented by the same attorneys who were pursuing the *Lopez* litigation—was deposed in connection with discovery in *Lopez* during the class certification disputes in that case.) The Court respectfully rejects the idea that a defendant's merely being apprised of a plaintiff's potential claim is sufficient to meet the statute of limitations. Otherwise, the date that lawsuits were filed and defendants were served would not be the focus of limitations litigation, as they typically are. A plaintiff could simply submit a letter to a putative defendant and put the defendant on notice of a potential claim (that presumably would be the subject of an actual

ii. Intentional Infliction of Emotional Distress

For many of the same reasons, the limitations period on Sellers' IIED claim was not tolled by the limited certification motion in *Lopez*. As mentioned, the IIED claim in *Lopez* was specifically averred as an individual claim and not as a class claim. (Case No. 01-C-1823, D.E. 69 at 21.) Moreover, the issues related to proving (or disproving) an intentional infliction of emotional distress are materially different from those attendant to determining whether a prompt probable cause hearing was afforded to a given plaintiff, and they also likely (as is surely the case with respect to Sellers's IIED claim) would be broader than whether sufficient sleeping facilities or equipment were provided for a given arrestee. *Accord, e.g., Southwire Co.*, 307 F. Supp. 2d at 1062 ("[T]o claim a tolling benefit from a previous class action, the legal theory on which the class action plaintiffs sued must be the same as the theory used by the plaintiffs claiming the tolling benefit. Because the Heliotrope actions did not involve the same causes of action as those in plaintiffs' present case against defendants, plaintiffs may not claim any tolling benefit from the Heliotrope class actions.").

Even if the Court were to put aside these material differences and look simply at the *Lopez* IIED claim and Sellers's IIED claim (which would not appear to be the appropriate analytical metric, as it would allow the putative tolling to reach beyond the earlier proposed class claims, in contravention of the principles discussed above), one sees that the *Lopez* non-class IIED claim was materially different in focus from Sellers's proposed IIED claim. Mr. Lopez's

---

complaint and service of summons at some undefined point(s) in the future). Put differently, Plaintiff's proposed method of analyzing equitable tolling cannot be squared with the approach reflected in Illinois precedent and, if accepted, would materially (if not fundamentally) alter existing analytical methodologies concerning limitations issues.

IIED claim was premised on the police officers allegedly having engaged in "extreme and outrageous conduct with respect to Plaintiff, to wit, the [d]efendants used violence, torture, and unlawful methods to attempt to coerce Plaintiff into confessing to a murder he did not commit." (Case No. 01-C-1823, D.E. 69 ¶ 75.) Regarding the *Sellers* claim, however, Plaintiff argues that Defendants "engaged in suggestive and unconstitutional actions" in order to induce Johnson and Bragg to identify Sellers as the perpetrator of a kidnapping of an FBI drug informant. (D.E. 6 ¶¶ 15, 17.) Plaintiff also argues in the alternative, among other things, that the Defendant Officers stood silent while they knew that Johnson and Bragg were knowingly and falsely identifying Sellers as a kidnapper. (*Id.*) The essence of these various alternative allegations, individually or collectively, is materially different than the focus of Lopez's coerced confession case.

Here, the current Defendants would not have received sufficient notice from the putative *Lopez* class claims such that tolling applies as to Sellers's IIED claim. *Accord Crown, Cork*, 462 U.S. at 354 (Powell, J., concurring) ("The [*American Pipe*] rule should not be read . . . as leaving a plaintiff free to raise different or peripheral claims following denial of class status."); *Southwire*, 307 F. Supp. 2d at 1063. Consequently, the City's motion is granted as to Count V.[7]

---

[7] In a second round of supplemental filings, Sellers cited a recent unpublished opinion, *Finwall v. City of Chicago*, No. 04-C-4663, 2005 WL 78948 (N.D. Ill. Jan. 12, 2005) (Manning, J.), which Sellers argues decided the issue presented in this case concerning class action tolling in his favor. The single footnote in the *Finwall* opinion addressing the issue of tolling vis-a-vis the *Lopez* class action is rather terse, so it is somewhat difficult to discern the particular arguments presented by the parties and specifics of the issues presented in *Finwall*. However, to the extent that *Finwall* holds that any given plaintiff who was putatively part of a proposed class in *Lopez* can thereafter bring a claim materially different from the proposed class claim and nonetheless gain the benefit of tolling, the Court respectfully disagrees with that analysis as it is inconsistent with the foundational opinions in this area of law and caselaw applying them cited and discussed above. *See, e.g., Crown, Cork & Seal Company, Inc. v. Parker*, 462 U.S. 345, 354 (1983) (Powell, J., concurring) ("The rule should not be read . . . as leaving a plaintiff free to raise different or peripheral claims following denial of class status."); *id.* ("Claims as to which the

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied in part and granted in part. The motion is denied with respect to Count II of Plaintiff's amended complaint. The motion is granted with respect to Counts IV and V.

So ordered.

                                                                _____
                                                               Mark Filip
                                                               United States District Judge
                                                               Northern District of Illinois

Dated: __7-13-05__

---

defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations.").